*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 30, 2020

Plaintiff-Appellee,

v

No. 346097
Genesee Circuit Court
LC No. 17-042261-FH

RAY WELDON GARRETT,

Defendant-Appellant.

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant, Ray Weldon Garrett, was convicted by a jury of one count of assault and battery, MCL 750.81(1), one count of assault by strangulation, MCL 750.84(1)(b), and two counts of domestic violence, third offense, MCL 750.81(2) and (5). Garrett was sentenced to serve concurrent terms of 67 to 120 months' imprisonment for the assault by strangulation conviction, 29 to 60 months' imprisonment for each domestic violence conviction, and 93 days for the assault and battery conviction.[1] We affirm.

## I. FACTS

This case arises from two incidents of domestic violence between Garrett and the victim when they were alone in the victim's home in Mt. Morris, Michigan. On September 29, 2017, Garrett and the victim were preparing food in the kitchen. Garrett became angry, slammed a pan down, grabbed the victim in the neck or chest area, pushed the victim against a wall, and put his hand around her throat. Garrett did not remove his hand until the victim began gasping for air. The victim got away from Garrett and ran to the home of a neighbor, who called the police. The

---

[1] The trial court entered two judgments of sentence. Garrett did not file an appeal as of right or an application for leave to appeal from the judgment of sentence in relation to his conviction for assault and battery and one of his convictions for domestic violence, third offense. Nonetheless, in the interest of judicial economy, we will consider Garrett's arguments in relation to those convictions and sentences. See MCR 7.216(A)(7).

-1-

responding officer testified that the victim was visibly distraught and had bruising around her throat. Garrett was arrested. When Garrett was released from jail, he returned to the victim's home.

On October 3, 2017, Garrett became angry with the victim while they were in an upstairs bedroom of her home and hit the victim in the head with his fists. Garrett also grabbed the victim by her hair and threatened to cut it. The victim ran downstairs to the front door, but Garrett prevented her from leaving the house. Garrett threatened to kill the victim and put his hand around her throat, which caused her to have difficulty breathing. Garrett eventually removed his hand from the victim's throat, threw her on a couch, and demanded that the victim have sexual intercourse with him. At some point, the victim's friend entered the house and saw the victim crying on the couch and Garrett facing the victim while buttoning up his pants. The victim's friend called the police, and Garrett was arrested. The responding officer testified that the victim was visibly upset, that her hair and clothing were in disarray, and that she had a cut lip and red marks around her throat.

Garrett was charged with two counts of assault by strangulation and two counts of domestic violence, third offense. During trial, the prosecutor introduced evidence of five other domestic violence incidents between Garrett and the victim. The jury convicted Garrett of the lesser offense of assault and battery for the September 29, 2017 incident, assault by strangulation for the October 3, 2017 incident, and domestic violence for each incident. Garrett was sentenced to terms of imprisonment, and this appeal followed.

## II. PRIOR ACTS OF DOMESTIC VIOLENCE

## A. STANDARD OF REVIEW

Garrett argues that the trial court abused its discretion by admitting evidence of his prior acts of domestic violence against the victim under MCL 768.27b(1) and MRE 404(b).[2] We review a trial court's decision to admit evidence for an abuse of discretion. *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013) (citation omitted). We review de novo questions of law such as "whether a rule of evidence or statute precludes admissibility of the evidence." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

---

[2] Garrett also argues that admission of the evidence violated his right to due process and denied him a fair trial. However, because Garrett has fully abandoned the constitutional argument on appeal, we need not address it. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

B.  ANALYSIS

1.  MCL 768.27b

Garrett challenges the admission of evidence of his prior acts of domestic violence against the victim under MCL 768.27b(1).  MCL 768.27b(1) provides, in pertinent part:

> Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible *for any purpose for which it is relevant*, if it is not otherwise excluded under Michigan rule of evidence 403.  [Emphasis added.]

"The language of MCL 768.27b clearly indicates that trial courts have discretion 'to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403.' "  *Cameron*, 291 Mich App at 609 (citation omitted).  This evidence "can be admitted at trial because 'a full and complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed.' "  *Id*. at 610, quoting *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007) (alteration in original).

Garrett concedes that the other acts presented by the prosecutor were relevant under MCL 768.27b, but argues that the trial court abused its discretion by failing to exclude the evidence under MRE 403.  We disagree.

MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When conducting the MRE 403 balancing test, the trial court "must weigh the propensity inference *in favor of the evidence's probative value* rather than its prejudicial effect." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012) (emphasis added).[3]  Evidence is not "unfairly prejudicial" simply because it is damaging.  Rather,

> [t]he "unfair prejudice" language of MRE 403 " 'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias,

---

[3] In *Watkins*, our Supreme Court analyzed the interaction between MRE 403 and MCL 768.27a(1), which allows evidence of certain past offenses against a minor to "be considered for its bearing on any matter to which it is relevant."  *Watkins*, 491 Mich at 480 n 75, quoting MCL 768.27a.  In *People v Mack*, 493 Mich 1, 3; 825 NW2d 541 (2012), our Supreme Court acknowledged the similarity of MCL 768.27b to MCL 768.27a.

sympathy, anger, or shock.'" Moreover, admission of "[e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." [*Cameron*, 291 Mich App at 611 (citations omitted; alterations in original).]

Considerations regarding prejudice include:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exclusive. [*Watkins*, 491 Mich at 487-488.]

Garrett argues that the evidence of prior domestic violence was unfairly prejudicial because the volume of evidence was overwhelming and confused the jury. At trial, the prosecutor introduced evidence of five other acts of domestic violence between Garrett and the victim, including (1) a May 2, 2016 incident where Garrett pinned the victim down, strangled her, and threatened to kill her; (2) a May 27, 2016 incident where Garrett slapped and punched the victim in the face and the head, strangled her, put her head under running water, and indicated that he should kill her with a knife; (3) a July 22, 2016 incident where Garrett held the victim down, punched her in the face, strangled her, shaved off all of her hair, and threatened to kill her; (4) a March 27, 2017 incident where Garrett punched and slapped the victim in the face, pulled her hair, forced her into a motor vehicle, hit her head against the window, and drove in an erratic manner; and (5) a September 17, 2017 incident where Garrett punched the victim in the face, strangled her, and threatened to kill her. In addition to the victim's testimony, the victim's friend and the police officers who responded to the incidents testified regarding their recollection of the incidents.

We conclude that the evidence had significant probative value for establishing Garrett's propensity to physically assault the victim. See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). See also *People v Propp*, __ Mich App __, __; __ NW2d __ (2019) (Docket No. 343255); slip op at 16. The evidence was also relevant to assess the victim's credibility, *Cameron*, 291 Mich App at 612, which was of particular importance in light of Garrett's argument that the victim was not credible. Finally, the other acts provided context for understanding the history of the relationship between Garrett and the victim. Thus, this was not marginally probative evidence that risked creating unfair prejudice. *Id*. at 611.

Although Garrett claims that the amount of evidence admitted confused the jury, the other acts all involved the same victim and demonstrated a pattern of violence by Garrett against the victim, thereby adding to its probative value. The risk that the jury would be distracted by extraneous considerations, such as bias, sympathy, anger, or shock, was addressed by the trial

court's instructions to the jury about the permissible use of the other-acts evidence.[4]  Additionally, the prosecutor's presentation of the other-acts evidence was limited to factual descriptions of the events and was therefore unlikely to inflame the jurors' passions such that they would be unable to rationally determine Garrett's guilt or innocence.  Furthermore, the record does not support that the jury was confused as to which instances of assault they were asked to focus on.  The prosecutor made it clear in her questions to the victim and the victim's friend that she was asking about prior acts, and the prosecutor clearly identified the dates of each incident when examining the police witnesses.  During closing arguments, defense counsel argued that the jury should not convict Garrett based on evidence of his past behavior.  Indeed, the jury acquitted Garrett of the more serious crime of assault by strangulation in relation to the September 29, 2017 assault.  Therefore, we conclude that the trial court did not abuse its discretion by admitting the evidence under MCL 768.27b.

## 2.  MRE 404(b)

Next, Garrett argues that the trial court abused its discretion by admitting the evidence of other acts of domestic violence because the evidence should have been precluded under MRE 404(b)(1), which requires "the prosecutor [to] offer the 'prior bad acts' evidence under something other than a character or propensity theory."  *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).  However, review of the record establishes that the trial court admitted the evidence under MCL 768.27b—not MRE 404(b).  Because the evidence was properly admitted under MCL 768.27b, Garrett is not entitled to relief.  See *Railer*, 288 Mich App at 219-221 (holding that because MCL 768.27b provides an independent statutory basis for admitting evidence of prior acts of domestic violence, it matters not whether evidence is inadmissible under MRE 404(b)).

## III. SENTENCING

## A.  STANDARD OF REVIEW

Next, Garrett argues that the trial court erred by assessing 10 points for offense variable (OV) 4 and OV 10.  This Court reviews for clear error the trial court's factual determinations at sentencing and "review[s] de novo whether the factual determinations were sufficient to assess points under OV[s]."  *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).  "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made

---

[4] The trial court instructed the jurors that they could consider the prior acts to determine whether Garrett committed the charged offenses, but could not convict Garrett solely because they believed he was guilty of the other bad conduct.  "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."  *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).[5]

## B. ANALYSIS

### 1. OV 4

Garrett argues that the trial court erred by assessing 10 points for OV 4. We disagree. Ten points are assessed for OV 4 for "psychological injury to victim" on a finding that "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The fact that the victim did not seek mental health treatment is not conclusive. MCL 777.34(2). An assessment of 10 points is appropriate if the victim suffered "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). Evidence of nightmares, disruption of the victim's life, and plans to seek treatment are also sufficient to support the assessment of 10 points for OV 4. *People v Drohan*, 264 Mich App 77, 90; 689 NW2d 750 (2004), overruled in part on other grounds by *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

In this case, testimony at trial supported that the victim was frightened after the assaults occurred. The victim reported to the presentence investigator that she could not sleep, she was "devastated," she felt that her life was "ruined," she was constantly fearful, she had difficulty focusing, and she felt that she needed psychological help. The victim also reported that she kept the doors on her house locked at all times because she "believe[d] [Garrett] will get out and show up" at her house. Although the victim acknowledged at trial that she had accepted Garrett's phone calls, she had visited him, and she had given him money while he was in jail, this conduct does not belie her reports that she suffered from ongoing trauma and fear as a result of the crimes. Expert testimony at trial supported that it is not uncommon for victims of domestic violence to minimize the incidents of violence, to blame themselves, and to return to their abusive partner because of past affection and fear of being alone and losing support. Because the record is sufficient to support the trial court's conclusion that the victim suffered a serious psychological injury which may require professional treatment, the trial court did not err by assessing 10 points for OV 4.

---

[5] As already stated, the trial court issued two separate judgments of sentence. When concurrent sentences are imposed, a trial court is required to calculate a guidelines minimum sentence range for the offense assigned the highest crime class. MCL 771.14(e)(*ii*). In this case, the trial court imposed concurrent sentences, and assault by strangulation and domestic violence were the highest crime classes. See MCL 777.16d. Therefore, those are the relevant offenses to examine for purposes of resolving the scoring issues. *People v Lopez*, 305 Mich App 686, 690; 854 NW2d 205 (2014) ("[T]he trial court was not required to independently score the guidelines for and sentence the defendant on each of his concurrent convictions if the court properly scored and sentenced the defendant on the conviction with the highest crime classification.").

## 2. OV 10

Garrett argues that the trial court erred by assessing 10 points for OV 10. We again disagree.

OV 10 relates to the exploitation of vulnerable victims. MCL 777.40. A sentencing court properly assesses 10 points under MCL 777.40(1)(b) if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). The existence of a domestic relationship does not automatically render a victim vulnerable. MCL 777.40(2).

Garrett first argues that his relationship with the victim cannot be considered a domestic relationship. MCL 777.40 does not define what constitutes a "domestic relationship." However, we have previously determined that the term "domestic relationship" under MCL 777.40(1)(a) refers to only a familial or cohabiting relationship. *People v Jamison*, 292 Mich App 440, 446-447; 807 NW2d 427 (2011). In this case, Garrett and the victim were in an on-again, off-again relationship for approximately five years. Although Garrett was never married to the victim, the two did not share any children, and Garrett primarily resided in Tennessee, the record supports that Garrett stayed with the victim at her home when he was in Michigan. While in Michigan, Garrett and the victim had sexual relations, shopped for groceries together, cooked meals together, and did housework together. Garrett also helped with repairs around the victim's house and assisted the victim with taking care of her elderly father. Therefore, the record supports that Garrett and the victim had a domestic relationship for purposes of MCL 777.40(1)(b).

Garrett also argues that the record does not support that the victim was "vulnerable." However, the record is replete with evidence indicating that the victim was vulnerable due to her domestic relationship with Garrett. Testimony indicated that she was repeatedly the target of domestic violence from him and that she repeatedly expressed her fear of him. Furthermore, testimony supported that Garrett assaulted the victim when they were alone in her house together, and it is apparent that they were alone together because they were in a domestic relationship. Thus, the trial court did not err by assessing 10 points for OV 10.

Affirmed.

/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron